UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LIBERTY CORPORATE CAPITAL LTD., )
and AMTRUST AT LLOYD'S LTD., )
  )
         Plaintiffs, )
  )
    v. ) No. 4:16CV816 JCH
  )
ROCHELLE G. CATUS, )
  )
         Defendant. )

# MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Partial Motion to Dismiss Defendant's Counterclaim and Plaintiffs' Motion to Strike, filed July 20, 2016. (ECF No. 7). The motion is fully briefed and ready for disposition.

## BACKGROUND

Prior to her disability, Defendant Rochelle G. Catus worked as a self-employed OB/GYN, who saw obstetrics patients for the first six months of pregnancy, and performed certain gynecological surgeries and/or procedures. (Complaint for Declaratory Judgment ("Compl."), ¶ 11). On June 13, 2013, Defendant saw Dr. Sherry Ma, a neurologist, for the specific symptoms of tingling in her hands, neck and shoulder stiffness, and occasional urinary incontinence.[1] (*Id.*, ¶ 13; Answer, ¶ 13).[2] Defendant was prescribed Gabapentin, which according to Plaintiffs is a medication commonly utilized to treat the symptoms of multiple sclerosis ("MS"). (*Id.*, ¶ 14).

---

1 Defendant previously had experienced tingling in her hands and feet and urinary incontinence in the early 1990s. (Compl., ¶ 12).
2 According to Plaintiffs, Defendant also complained of tingling in her feet, tingling and numbness in her chest and abdomen, and trouble walking. (Compl., ¶ 13).

Defendant underwent an MRI of her cervical spine on June 18, 2013, and an MRI of her brain on June 26, 2013.³ (Compl., ¶¶ 15, 16). According to Plaintiffs, Dr. Ma's records from June 26, 2013 state, "demyelinating disease is a serious consideration in this patient." (*Id*., ¶ 17).

On July 12, 2013, Defendant completed a Multi-Life Disability Income Insurance Enrollment Form, applying for permanent and total disability insurance with Lloyd's of London. (Compl., ¶ 18 and att. Exh. B). Policy No. 13396V13149A-003 went into effect on August 15, 2013, providing certain coverage to Defendant through August 14, 2018, subject to the Policy's terms, conditions, limitations, and exclusions. (*Id*., ¶¶ 1, 21 and att. Exh. A).

On December 4, 2013, Defendant was officially diagnosed with MS. (Compl., ¶ 22). In April, 2015, she submitted a Proof of Loss statement to Hanleigh Management, Inc., stating that Defendant became permanently and totally disabled on October 15, 2014, due to MS. (*Id.*, ¶¶ 23, 24 and att. Exh. C). Included with Defendant's Proof of Loss was neurologist Barbara Green's Attending Physician's Statement ("APS"), in which Dr. Green stated that Defendant's symptoms first appeared in October, 2013, but then qualified that her "symptoms occurred 1991-92, then dissapated (sic) and did not return until 2013." (APS, ECF No. 1-3, P. 4). Dr. Green noted that Defendant first consulted her for the condition on December 4, 2013, that she met the criteria for a diagnosis of MS in September, 2013, and that she became permanently and totally disabled on approximately September, 30, 2014. (*Id.*, PP. 4-5).

On or about January 5, 2016, following an investigation of Defendant's claim and review of her provided medical records, Plaintiffs denied Defendant's claim. (Compl., ¶ 32 and att.

---

3 According to Plaintiffs, the MRI of Defendant's brain revealed brain abnormalities, including white matter lesions suggestive of demyelinating disease, the most common form of which is MS. (Compl., ¶¶ 16, 17).

Exh. D). Defendant appealed the decision, and a second denial letter was issued on or about March 17, 2016. (*Id.*, ¶ 36 and att. Exh. E; Answer, ¶ 35).

On June 8, 2016, Plaintiffs filed the instant Complaint for Declaratory Judgment, seeking a declaration that Defendant's MS is a pre-existing condition not covered by the Policy (Count I); that there is no loss due to injury or sickness under the Policy (Count II); that the Policy's pre-existing condition limitation bars coverage (Count III); that Rider #1 bars coverage for Defendant's claim (Count IV); and that Defendant's MS did not manifest itself while the Policy was in force and her total disability did not commence within one year of a covered sickness (Count V).

On June 30, 2016, Defendant filed her Answer and two count Counterclaim. As noted above Plaintiffs filed the instant Partial Motion to Dismiss Defendant's Counterclaim and Motion to Strike on July 20, 2016, asserting portions of Defendant's Counterclaim must be dismissed for failure to state claims upon which relief can be granted, and her reference to punitive damages should be stricken as such damages are unavailable under relevant Missouri law. (ECF No. 7).

## **STANDARD FOR MOTION TO DISMISS**

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## STANDARD FOR MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Although courts enjoy 'broad discretion' in determining whether to strike a party's pleadings, such an action is 'an extreme measure.'" *SSM Health Care Corp. v. Repwest Ins. Co.*, 2014 WL 5800214, at *3 (E.D. Mo. Nov. 7, 2014) (quoting *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)). "Accordingly, motions to strike are viewed with disfavor and are infrequently granted." *Id.* (internal quotation marks and citations omitted).

## DISCUSSION

I. **Count I**

In their Motion to Dismiss, Plaintiffs first assert that Defendant's claim of bad faith against Plaintiffs in Count I of her Counterclaim must be dismissed, because Missouri law does not recognize a cause of action for bad faith in the first-party insurance context. (Plaintiffs' Partial Motion to Dismiss Defendant's Counterclaim, PP. 5-6). In response, Defendant clarifies that Count I of her Counterclaim is a claim for breach of contract and vexatious refusal to pay under the Missouri statutes cited therein. (Defendant's Suggestions in Opposition to Plaintiffs'

Partial Motion to Dismiss, PP. 1-2). The Court therefore will strike the references to "bad faith" and lack of "good faith" contained in paragraphs 6, 11, and 12 of Defendant's Counterclaim, and further will strike Defendant's request for punitive damages in connection with Count I of her Counterclaim. *See SSM Health Care*, 2014 WL 5800214, at *3; *see also Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 68 (Mo. banc 2000).

II.  **Count II**

In their Motion to Dismiss, Plaintiffs next assert Defendant's claim for "fraud and misrepresentation" must be dismissed, as "Dr. Catus' misrepresentation claim is simply a thinly-veiled attempt to recast the breach of contract claim in Count I as a tort claim." (Plaintiffs' Partial Motion to Dismiss Defendant's Counterclaim, P. 7). Plaintiff counters that a tort claim may be brought concurrently with a breach of contract and vexatious refusal to pay claim, if the tort claim is based on separate conduct and depends on different elements. (Defendant's Suggestions in Opposition to Plaintiffs' Partial Motion to Dismiss, PP. 2-3).

Under Missouri law, "[w]hen an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract. Damages for breach of contract are limited to the loss of the benefit itself." *Overcast*, 11 S.W.3d at 67. The Missouri legislature has provided another avenue for recovery when there is a vexatious refusal to pay, however, under Mo.Rev.Stat. § 375.420.[1] "[Section 375.420] compensates an insured for

---

[1] Mo. Rev. Stat. § 375.420 provides as follows: "In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

consequential damages, such as attorneys fees and interest associated with collection, when the insurance company refuses to pay without reasonable cause or excuse." *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, 2006 WL 1722278, at *2 (E.D. Mo. Jun. 19, 2006) (internal quotation marks and citation omitted).

As recognized by the court in *Overcast*, Section 375.420 does not, "immunize insurers against all other claims made by an insured [other than breach of contract and vexatious refusal to pay] for any conduct occurring during a claim determination." *Overcast*, 11 S.W.3d at 68. Rather, additional tort liability may attach "when an independent tort has been committed against the plaintiff." *Lloyd's*, 2006 WL 1722278, at *2 (citation omitted).

> The independent tort alleged cannot be dependent on the elements of the contract claim. Independent facts must form the basis for the tort claim to survive a motion to dismiss.

*Id.* (internal quotation marks and citation omitted). In other words, Missouri law does not allow contract claims simply to be recast as tort claims. *See Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

In the instant case, Defendant has failed to plead any facts which show Count II rests upon elements that are distinct from Count I. In other words, when boiled down to their essence both claims allege that Plaintiffs represented they would pay disability benefits upon proper application, but then refused to do so.[4] Defendant thus is foreclosed from asserting her claim of "fraud and misrepresentation" against Plaintiffs, "because the facts pled in [Count II] are already within [her] cause[] of action for breach of contract and vexatious refusal to pay." *Ryann*

---

4 The Court notes that the sole representation asserted by Defendant in Count II resides within paragraph 15, which states as follows: "Counterdefendant[s] represented they would issue and pay long term benefits to Counterplaintiff with her application, information therein and payment of premium. These representations were false."

*Spencer Group, Inc. v. Assurance Co. of America*, 275 S.W.3d 284, 290 (Mo. App. 2008) (citations omitted). The *Ryann* court continued as follows:

> [Plaintiff's] fraud and negligent representation claims against [Defendant] are based on [Defendant's] refusal to pay and are not based on conduct distinct from conduct that merely constitutes a breach of contract. The mere failure to perform a contract cannot serve as the basis of tort liability unless the breach itself is an independent tort….It is still the law though that an insured with a dispute against its insurance company cannot substitute a tort claim *when a contract remedy is available*. *Overcast* concerned a defamation suit which, as the Supreme Court noted, is not related to the common law contract remedy. [Plaintiff's] fraud and negligent representation claims against [Defendant] are related to its breach of contract and vexatious refusal to pay claims.

*Id.* (internal citations omitted). The Court therefore will dismiss Count II of Defendant's Counterclaim for failure to state a claim upon which relief may be granted.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Partial Motion to Dismiss Defendant's Counterclaim (ECF No. 7) is **GRANTED**, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (ECF No. 7) is **GRANTED**.

Dated this 23rd Day of August, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE